*80 OPINION OF THE COURT
Barry M. Donalty, J.
Pursuant to the request of the defendant, this court has reviewed the Grand Jury minutes.
The issue raised by the defendant and to be addressed by this decision is whether the House of the Good Shepherd is a detention facility as contemplated by the Legislature with the enactment of Penal Law § 205.00 (1).
The defendant is charged with escape in the second degree in violation of Penal Law § 205.10 (1). That section reads as follows:
“A person is guilty of escape in the second degree when * * * “[h]e escapes from a detention facility”.
Penal Law § 205.00 (1) defines a detention facility as meaning “any place used for the confinement, pursuant to an order of a court, of a person (a) charged with or convicted of an offense, or (b) charged with being or adjudicated a youthful offender, person in need of supervision or juvenile delinquent, or (c) held for extradition or as a material witness, or (d) otherwise confined pursuant to an order of a court.”
In deciding the issue raised by the defendant, this court has reviewed the history of the defendant’s placement in the House of the Good Shepherd as evidenced in the Grand Jury minutes.
Testimony was presented to the Grand Jury from a senior supervisor at the House of the Good Shepherd that at “the facility * * * we treat children [who] are at risk or have lost their families or homes”. (Grand Jury transcript, at 3.) His testimony further revealed that the facility houses children from age 5 to age 18 in a residential setting. Some of the children residing in the facility were placed there by the Oneida County Department of Social Services after that agency received custody of the child upon the order of the Family Court. Custody is given to the Department of Social Services after the Family Court has determined a child to be either a Person in Need of Supervision (PINS) or a juvenile delinquent.
When asked to explain to the Grand Jury what restrictions are placed on the children the witness responded (at 6): “We basically go by verbal restrictions. We have no locked doors, we have no bars on the windows that keep the boys there. Each kid comes in, we set them down and we basically orientate them to the rules of the program. We explain that they are not to leave the building without permission”.
*81 There was additional testimony presented to the Grand Jury that they employ a “level system”. (Grand Jury transcript, at 7.) It would appear from a review of the transcript that each child is arbitrarily (“It’s kind of a judgment call on all staff’ [Grand Jury transcript, at 7, 8]) assigned a level which designates the amount of discretion the child has concerning their movement within or without the campus. In fact, the middle level, called the progressive level, “permits the child to go off campus for a half-hour.” (Grand Jury transcript, at 7.) There was no testimony as to what movement would be allowed for one designated by the highest level — the independent level — but presumedly one so designated would have even greater latitude in leaving the campus unescorted than does a progressive level designee.
The defendant in this action was placed in the custody of the Department of Social Services, and by that agency in the care of the House of the Good Shepherd as a result of a “Pins petition through County Court.” (Grand Jury transcript, at 6.) Apparently, the witness misspoke and meant to testify that the order was from Family Court.
Further testimony was presented to the Grand Jury that the defendant left the House of the Good Shepherd Campus without permission on both March 30 and March 31, 1998. The witness observed the defendant walk away from the campus on March 31, 1998 and testified that he thereupon notified the State Police and others of the defendant’s status. He took no action, beyond a verbal warning, to prevent the defendant from leaving the campus.
The defendant stands accused in this indictment as a result of the March 31, 1998 incident. There is no mention in the indictment about the March 30, 1998 incident. The defendant was 16 years old on March 31, 1998.
The issue, simply stated, is whether the conduct outlined above is the type of conduct the Legislature intended to criminalize when the escape statute was enacted.
Family Court Act § 712 (a) defines a person in need of supervision as “[a] male less than sixteen years of age * * * who does not attend school in accord with the provisions of part one of article sixty-five of the education law or who is incorrigible, ungovernable or habitually disobedient and beyond the lawful control of [a] parent or other lawful authority or who violates the provisions of section 221.05 of the penal law.”
*82 It is worthwhile to note that the underlying activity which may lead to a PINS placement does not constitute criminal activity by one age 16 or more.
This would be in stark contrast if one were found to be a juvenile delinquent, for that requires a finding that the child’s underlying actions “would constitute a crime if committed by an adult” (Family Ct Act § 301.2 [1]).
This defendant’s placement was as a PINS, and not as a juvenile delinquent. This would, of course, mean that the underlying actions of the defendant which led to his placement were noncriminal in nature.
Family Court Act § 712 (b) defines detention as “[t]he temporary care and maintenance of children away from their own homes as defined in section five hundred two of the executive law.”
Family Court Act § 712 (c) provides that a “secure detention facility” is characterized by physically restricting construction, hardware and procedures.
Family Court Act § 712 (d) provides that a “non-secure detention facility” is characterized by the absence of physically restricting construction, hardware and procedures.
There can be little doubt based upon the testimony before the Grand Jury that the House of the Good Shepherd falls within the definition of a “non-secure detention facility”.
The New York State Legislature clearly stated its intent concerning a PINS placement when it approved an amendment to Family Court Act § 756 which added subdivision (c). (L 1987, ch 419, § 23.) That amendment, enacted into law long after the provisions of Penal Law § 205.00 (1) and § 205.10 (1), states that: “A placement pursuant to this section with the commissioner of social services shall not be directed in any detention facility”. (Family Ct Act § 756 [c].)
Thus, a court is provided with no statutory discretion concerning the placement of any child found to be a PINS — it shall not be in any detention facility.
There have been a few cases in New York dealing with this or a similar issue. In Matter of Freeman (103 Misc 2d 649, 655), the court determined that a PINS held in a facility similar to the House of the Good Shepherd is “not in ‘detention’ for purposes of the criminal escape provisions of the Penal Law”.
A similar result was reached by the Court in Matter of Sylvia H. (78 AD2d 875). The Court concluded that a PINS placed in a nonsecure facility who runs away from that facility cannot be charged with escape in the second degree.
*83 The Court of Appeals has not directly addressed the issue confronting this court. However, in People v Ortega (69 NY2d 763), the Court concluded that a defendant confined to a non-secure psychiatric facility pursuant to court order who leaves the facility without authorization cannot be charged with escape in the second degree. The Court stated (at 764): “We agree with the courts below that a nonsecure facility does not constitute a detention facility within the meaning of Penal Law § 205.00 (1) and that, therefore, defendant cannot be guilty of escape in the second degree (Penal Law § 205.10).”
While this decision is not dispositive of the issue in this case, the opinion provides clear direction to this court and highlights the thinking of the Court of Appeals that a nonsecure facility, as is the House of the Good Shepherd, does not constitute a detention facility within the meaning of Penal Law § 205.00 (1).
The guidance that this court receives from the Court of Appeals in Ortega (supra) and from the Legislature by Family Court Act § 756 (c), simply stated, is that any nonsecure facility cannot be considered a detention facility under the Penal Law.
The Court also specifically referred in Ortega to the fact that the confinement in that case was no longer for “ ‘security, confinement and prevention of escapes’ ” but “ ‘therapy and rehabilitation’ ”. (People v Ortega, supra, at 765.)
As previously stated, the testimony before the Grand Jury in this case was that a child is placed in the House of the Good Shepherd for treatment purposes and not for punishment purposes. It cannot be disputed that the intent of the Legislature in enacting article 7 of the Family Court Act was to provide a plan for the treatment and rehabilitation of children in need of supervision, including this defendant, and not to punish them. And thus, the placement must be other than in a detention facility.
This court simply cannot accept the argument of the People that the Legislature intended that a child, like this defendant, placed in a facility for what is noncriminal behavior, can become a felon for walking or even running away from the facility.
To carry such an argument to its logical conclusion, a PINS child, unthinking of the consequences of his actions, who leaves the House of the Good Shepherd grounds to go to a convenience store for a pack of gum or a bag of chips is guilty of escape in *84 the second degree. Or for that matter, an orphaned child or a material witness, not even a PINS or juvenile delinquent, placed by a court at the House of the Good Shepherd who leaves the grounds could suffer the same fate.
It defies common sense to think that this is what the Legislature intended. It is this court’s judgment that the House of the Good Shepherd is not a detention facility under the provisions of Penal Law § 205.00 (1).
For the reasons stated above, the first count of the indictment is dismissed.
The second count charges the defendant with escape in the third degree.
Penal Law § 205.05 defines escape in the third degree as when a person escapes from custody.
Penal Law § 205.00 (2) defines custody as meaning restraint by a public servant pursuant to an authorized arrest or an order of a court.
Penal Law § 10.00 (15) provides that a public servant means (a) any public officer or employee of the State or any political subdivision thereof or of any governmental instrumentality within the State or (b) any person exercising the functions of any public officer or employee.
There was no testimony presented to the Grand Jury which would satisfy the requirement that the defendant was in the custody of any public servant. To the contrary, it would appear that the supervisors at the House of the Good Shepherd are employed by that agency and not in any way affiliated with any State or local government.
Therefore, the second count of the indictment must also be dismissed.
It is the judgment of this court that the proper forum to resolve the defendant’s actions of March 31, 1998 is the Oneida County Family Court wherein the action originated, and from where the order of placement was issued.